UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| STACY YURON HART, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RICHARD BROWN, et al. )<br>)<br>Defendants. ) | No. 2:19-cv-00020-JRS-DLP |

**Order Granting Motion for Summary Judgment and Directing Entry of Final Judgment**

Plaintiff Stacy Yuron Hart, an inmate at the Wabash Valley Correctional Facility, filed this 42 U.S.C. § 1983 action based on his treatment by prison staff and Warden Richard Brown after Mr. Hart's wife threatened legal action against an Aramark employee working at Wabash Valley. The defendants have moved for summary judgment, and the motion is fully briefed.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

1

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and need not "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. Facts

Except where noted, the following facts are undisputed:

In July 2018, Mr. Hart was working in Wabash Valley's production kitchen with Ms. Jett, an Aramark Employee. Ms. Jett played a practical joke on Mr. Hart that ended with Ms. Jett splashing Mr. Hart in the face with a water bottle. Mr. Hart did not report Ms. Jett's actions to Wabash Valley or Aramark, but he mentioned them to his wife. Mr. Hart's wife then called Wabash Valley and reported the incident.

On August 16, 2018, defendants Mr. Davis and Mr. Carpenter, both staff with the Wabash Valley Office of Investigations and Intelligence, called on Mr. Hart to discuss the incident. They told Mr. Hart that his wife wanted to press criminal charges against Ms. Jett. According to Mr. Hart's deposition testimony, they then asked, "[D]o you expect us to file outside charges against a woman, you know, for a joke?" Dkt. 34-1 at 18. Mr. Hart responded, " I don't expect you to do anything. My wife evidently is taking care of everything." *Id.* Mr. Hart clarified at his deposition that he did not intend to press criminal charges based on Ms. Jett's actions. *Id.* at 19 ("No, or I would have done it because I will — I can take up for myself. I don't need my wife

2

taking up for me or speaking for me. I'm a man, you know. So I speak for myself."). Before Mr. Davis and Mr. Carpenter interviewed him, Mr. Hart considered the issue "done and gone." *Id.*

Mr. Davis and Mr. Carpenter ended the interview by handcuffing Mr. Hart and transporting him to the Custody Control Unit ("CCU"). Mr. Hart remained there from August 16 to August 22, 2018. On August 22, Mr. Hart was moved to another housing unit that was transitioning to restricted movement. He returned to general population on October 10, 2018. When Mr. Hart wrote a letter complaining of the transfer, he was informed, "You requested being moved to the north side due to your concerns of being retaliated against for turning in a staff member to this department. You specifically asked to be placed on the north side for your own safety." Dkt. 1-1 at 16. Mr. Hart denies ever making such a request. Dkt. 34-1 at 37−38.

Mr. Hart was litigating a post-conviction petition in Indiana state court when he was transferred to the CCU. On October 16, 2018, the Indiana Court of Appeals dismissed Mr. Hart's post-conviction appeal for failure to file his notice of appeal in the proper court. Dkt. 34-2. Mr. Hart's complaint attributes the error to lack of law library access in the CCU. Dkt. 1 at 5. On Mr. Hart's motion, the appeal was reinstated on November 16, 2018. Dkt. 34-3.

Until he returned to general population, Mr. Hart could not receive "fatherhood visits," which he describes as "better visits as opposed to normal visits." Dkt. 34-1 at 30. Other visitation options remained available. *Id.* at 31.

### III. Discussion

Mr. Hart alleges that Mr. Carpenter and Mr. Davis violated his First Amendment right by retaliating against him for threatening legal action against Ms. Jett. He further alleges that Warden Brown violated his First Amendment right to access the courts and his right to family visitation.

3

The Court will address each allegation in turn. But first, the Court must address the parties' dispute regarding the deposition transcript's accuracy.

### A. The Deposition Transcript

Mr. Hart argues that the deposition transcript should be disregarded because he did not sign it: "After Plaintiff read the 60 plus pages of the transcript Plaintiff found so many errors and discrepanc[ies] which made Plaintiff question the authenticity of the transcript . . . and does question the compan[y's] so called bi-partisanship." Dkt. 37 at 5. But Mr. Hart does not identify any of the alleged errors — because, according to Mr. Hart, he did not have time "to re-write the entire transcript." *Id.* The Court will not disregard the deposition transcript on Mr. Hart's say so. Indeed, "a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription." *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000).

To the extent Mr. Hart seeks to contradict his deposition testimony by relying on an affirmation filed with his response to the summary judgment motion, *see* dkt. 37-1 at 7, he does not succeed. The Court disregards under the sham-affidavit rule any sworn statement by Mr. Hart in his complaint or summary judgment memorandum that contradicts his deposition testimony. *See James v. Hale*, 959 F.3d 307 (7th Cir. 2020) (discussing and applying sham affidavit rule).

### B. Retaliation Claim

Prison officials may not retaliate against an inmate for exercising First Amendment rights. To prevail on his First Amendment retaliation claim, Mr. Hart must point to evidence that would allow a jury to conclude that (1) he engaged in activity protected by the First Amendment; (2) the defendants responded with actions that would likely deter future First Amendment activity;

4

and (3) his First Amendment activity was "at least a motivating factor" for the defendants' actions. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020).

For purposes of this motion, Mr. Carpenter and Mr. Davis do not deny transferring Mr. Hart based on his wife's complaint and then falsifying a more acceptable basis for the transfer. They argue only that they did not transfer Mr. Hart to deter him from exercising *his* First Amendment rights because he never suggested that he intended to engage in protected activity. Dkt. 35 at 4.

Indeed, Mr. Hart never made a formal complaint about Ms. Jett, and he never intended to seek criminal charges or take any other legal action. Mr. Hart claims that his statement during the interview was a "threat[ ] to have his wife file charges." Dkt. 37 at 3. But this claim cannot be squared with the record. There is no evidence Mr. Hart's wife indicated that she was acting on her husband's instruction. On the contrary, Mr. Hart testified in his deposition that if he wanted to take legal action, he would have done it himself. Dkt. 34-1 at 19 ("I would have done it because . . . I can take up for myself. I don't need my wife taking up for me or speaking for me. I'm a man, you know. So I speak for myself."). And even by the time of the deposition, Mr. Hart had "no clue" whether his wife pursued the matter any further. *Id.* at 20.

To be sure, if Mr. Hart's account is true, Mr. Davis and Mr. Carpenter's conduct was, as Mr. Hart describes it, an "abuse of power." But a prison official's abuse of power does not necessarily violate the Constitution. Mr. Hart has no freestanding right to be housed in general population. *See Holleman*, 951 F.3d at 878; *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (prisoner has no liberty interest to be free from short-term confinement in segregation housing). So while Mr. Davis and Mr. Carpenter may have engaged in shameful

conduct against Mr. Hart—again, assuming his account is true—there is no evidence from which a jury could find that they violated Mr. Hart's constitutional rights.[1]

### C. Access to Courts Claim

Mr. Hart argues that Warden Brown denied him access to the courts by failing to provide adequate law library services to him when he was not housed in general population. To survive summary judgment on this claim, Mr. Hart must provide evidence that Warden Brown interfered with his First Amendment right to access the courts *and* that "the interference actually prejudiced him in his pending litigation." *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013).

Mr. Hart alleged possible prejudice in his complaint, stating that his post-conviction appeal was dismissed because he was unable to access the law library. Dkt. 1 at 5. But Mr. Hart failed to mention in his complaint the Indiana Court of Appeals had allowed him to file a late notice of appeal. *See* dkt. 34-3. The Indiana Court of Appeals has since decided Mr. Hart's appeal on the merits, dkt. 34-4, and Mr. Hart acknowledges that he had access to the general population law library during the briefing stage of that appeal, dkt. 34-1 at 44−45. Mr. Hart has therefore failed to point to evidence that would allow a jury to find in his favor on his First Amendment access to courts claim.

### D. Visitation Claim

Finally, Mr. Hart alleges that Warden Brown denied him access to "fatherhood visits" in violation of the Constitution. "[P]rison officials may violate the Constitution by permanently or

---

[1] Despite the parties' focus on retaliation, the Court also has considered whether Mr. Davis and Mr. Carpenter's actions constituted a prior restraint of Mr. Hart's First Amendment rights. *See Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) (noting that retaliation can be a misleading lens by which to view a First Amendment claim). Because Mr. Hart showed no indication that he intended to exercise his First Amendment rights by pursuing legal action against Ms. Jett, his claim cannot survive summary judgment on a prior restraint theory, either.

arbitrarily denying an inmate visits with family members in disregard of the factors described in *Turner* and *Overton*." *Easterling v. Thurmer*, 880 F.3d 319, 323 (7th Cir. 2018); *see Turner v. Safley*, 482 U.S. 78, 89 (1987) (prison restrictions on inmates' constitutional rights must be "reasonably related to legitimate penological interests"); *Overton v. Bazzetta*, 539 U.S. 126, 131−32 (2003) (indicating that permanent or arbitrary limits on family visits may violate First Amendment right to association).

Warden Brown asserts qualified immunity as to this claim. "Qualified immunity is an affirmative defense, but once it is raised the burden shifts to the plaintiff to defeat it." *Holleman*, 951 F.3d at 877. That is, the facts viewed in the light most favorable to Mr. Hart must show that Warden Brown violated his constitutional right and that the right was clearly established at the time. *Id.* Mr. Hart has failed to show that he had a clearly established constitutional right to "fatherhood visits" that are "better visits as opposed to normal visits." *See* dkt. 34-1 at 30. Warden Brown therefore is entitled to qualified immunity on this claim.

### IV. Conclusion

The defendants' motion for summary judgment, dkt. [34], is **granted**. Final judgment shall now issue.

**IT IS SO ORDERED.**

Date: 6/10/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

STACY YURON HART
955982
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Michael J. Blinn
INDIANA ATTORNEY GENERAL
michael.blinn@atg.in.gov

Sarah Jean Shores
INDIANA OFFICE OF THE ATTORNEY GENERAL
sarah.shores@atg.in.gov